DEPARTMENT OF FINANCIAL INSTITUTIONS *v.* COLONIAL BANK & TRUST COMPANY

[No. 2-975A254. Filed May 11, 1978. Rehearing denied August 10, 1978.]

*Theodore L. Sendak,* Attorney General of Indiana, *Susan J. Davis,* Deputy Attorney General, for appellant.

*Dean E. Richards,* of Indianapolis, for appellee.

### CASE SUMMARY

BUCHANAN, C.J.— The Department of Financial Institutions (Department) appeals a decision by the Marion Superior Court, Number Three, reversing its denial of Colonial Bank & Trust Co.'s (Colonial) application to establish a new commercial banking institution, claiming that any procedural errors by the Department were harmless, that the court misinterpreted "public necessity" as stated in IND. CODE 28-1-2-26, and

that the denial by the Department was supported by substantial evidence.

We reverse.

## FACTS

On June 5, 1974, Colonial filed with the Department its application for organization of a new commercial bank in Zionsville, Indiana. After hearings, the application was denied on September 23, 1974, due to a lack of a public necessity for a new bank in the proposed service area.

Colonial petitioned for judicial review. The trial court set aside the denial, finding that the Department had incorrectly interpreted "public necessity" as used in IND. CODE 28-1-2-26,[1] and that the Department had failed to meet two statutory procedural requirements.

Pursuant to the trial court's order, the Department held another hearing. On January 14, 1976, the application was again denied.

Colonial filed a Petition for Additional Judicial Review. The trial court, on May 6, 1976, found the denial was not supported by sufficient evidence, and ordered the Deparmtent to approve the application and issue a charter for the new bank.

The Department appeals.

## ISSUES

Three issues are presented:

1. What was the effect of certain procedural irregularities in notifying Colonial of the Department's decision?

---

1. IND. CODE 28-1-2-26 states:

Upon the filing of such application, the department shall make, or cause to be made, a careful investigation and examination relative to the financial standing and character of the incorporators or organizers, the character, and qualifications and experience of the officers of the proposed financial institution, of the *public necessity for the financial institution in the community in which such proposed financial institution is to be established,* and, if the institution is to be a bank or trust company, of the adequacy of the proposed capital thereof; and *if the members of the department, after the hearing, as hereinbefore provided, shall determine either of such questions unfavorably to such applicants, the application shall not be approved,* and if all such questions be determined favorably, the application shall be approved.

(emphasis added)

2. Did the trial court correctly define public necessity, as stated in IND. CODE 28-1-2-26?

3. Was the Department's decision supported by any substantial evidence?

As to Issue One, the Department argues that any procedural irregularities were harmelss, and therefore could not be a basis for reversing its decision. Colonial maintains it was harmed by procedural irregularities in that it did not receive the form of notice to which it was entitled by statute.

As to Issue Two, the Department contends that the trial court erred by defining "public necessity" too broadly. Colonial asserts that the court's definition was correct and in accord with case law.

As to Issue Three, the Department contends that given the proper definition of "public necessity" there was substantial evidence to support its decision. Colonial maintains that the trial court using its own correct definition of "public necessity" properly found the Department's decision was not supported by substantial evidence.

## DECISION

### Issue One

CONCLUSION—Procedural irregularities in notifying Colonial of the Department's decision, if they existed, were harmless and could not be the basis for reversing the Department's decision.

The trial court found two procedural irregularities in providing Colonial with notice of the Department's decision. First, the Department failed to notify Colonial of its decision by certified or registered mail as required by IND. CODE 4-22-1-1 through 30. Second, the Department failed to give such notice of its decision within sixty (60) days from the date of the hearing, as required by IND. CODE 28-1-2-25.

The Department concedes that notice was not given by certified or registered mail. But it disputes that IND. CODE 28-1-2-25 requires notice of the Department's decision must be given within sixty (60) days.

We need not reach a decision on statutory interpretation, for these errors, if they exist, were harmless.

In judicial appeals from administrative decisions, trial courts may not reverse for errors which are non-prejudicial and harmless. *Ogilvie v. Review Board of Indiana Employment Security Division* (1972), 133 Ind. App. 664, 184 N.E.2d 817; *Deszancsity v. Oliver Corp.* (1948), 118 Ind. App. 504, 81 N.E.2d 703; 1 I.L.E., Administrative Law & Procedure, § 80; 73 C.J.S., Public Administrative Bodies & Procedure, § 252. *See Indiana University v. Hartwell* (1977), 174 Ind. App. 325, 367 N.E.2d 1090; *L. S. Ayres & Company v. Indianapolis Power & Light Co.* (1976), 169 Ind. App. 653, 351 N.E.2d 814.

Colonial received notice of the Department's decision by regular mail. The notice was mailed October 8, 1974, and received October 11, 1974—seventy (70) days after the administrative hearing. Colonial claims harmful error only in that it failed to receive notice to which it was entitled by statute. Colonial does not claim, nor can we perceive any way in which it could claim, that its substantial rights were in any way compromised[2] by the Department's procedural irregularities.

As Colonial actually received notice of the Department's decision within a brief time after the sixty (60) day period, and as Colonial has been able to avail itself of full judicial review there has been no prejudice to its substantial rights. Therefore the error is harmless and cannot serve as a basis upon which to reverse the Department's decision.

*Issue Two*

*CONCLUSION*—The trial court incorrectly defined "public necessity" as that term is used in IND. CODE 28-1-2-26.

Public necessity is a substantial or obvious community need in light of attendant circumstances. It is a somewhat nebulous concept which

---

2. Ind. Rules of Procedure, TR. 61:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or oder in anything done or omitted by the court or by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. *The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.*

(emphasis added)

requires more than mere convenience but less than absolute or indispensable need. *Farmers State Bank, LaGrange v. Dept. of Financial Institutions* (1976), 171 Ind. App. 145, 355 N.E.2d 277. *See VIP Limousine Service, Inc. v. Herider-Sinders, Inc.* (1976), 171 Ind. App. 109, 355 N.E.2d 441.

The trial court was mistaken in finding that the Department could rule there was no public necessity only if "another bank in the designated service area would have tended to seriously injure the existing financial institutions already there, and bring about bank failures."

Neither Colonial nor this court's research has revealed a single case in which public necessity for the establishment of a new bank was determined solely on whether its creation would endanger an existing financial institution.

Among the factors to be considered in determining public necessity are: a community's population, including size, composition, density and growth rate; economic growth projections; the community's current business situation; investments by other companies anticipating growth; and availability and quality of banking services provided by existing institutions. *Farmers State Bank, LaGrange v. Dept. of Financial Institutions, supra.*

Other factors which may be considered include: the number of banks recently chartered compared to projected growth, *Moran v. Nelson* (1948), 322 Mich. 230, 33 N.W.2d 772; stimulation of banking competition within the community, *Second National Bank of Culpeper v. New Bank of Culpeper* (1974), 215 Va. 132, 210 S.E.2d 136; and whether the community is "overbanked", *Western Pennsylvania National Bank v. Myres* (1962), 407 Pa. 298, 180 A.2d 423.

Our decision as to what constitutes "public necessity" is controlled by *Farmers State Bank, LaGrange v. Dept. of Financial Institutions, supra.*

In the hearings before it the Department heard and considered a broad range of circumstances encompassing the various factors referred to above, and therefore acted properly in reaching its decision.

The remaining question is whether, using the proper definition of

public necessity, the Department's denial of Colonial's application was supported by substantial evidence.

*Issue Three*

*CONCLUSION*—The Department's initial denial of Colonial's application was neither arbitrary nor capricious, and was supported by substantial evidence.

An administrative decision can only be overturned if it is not supported by substantial evidence or if uncontradicted facts show the decision to be arbitrary and capricious. The reviewing court can not substitute its judgment for that of the administrative body. *Dept. of Financial Institutions v. State Bank of Lizton* (1969), 253 Ind. 172, 252 N.E.2d 248; *City of Indianapolis v. Nickel* (1975), 165 Ind. App. 250, 331 N.E.2d 760; *Indiana Alcoholic Beverage Commission v. Johnson* (1973), 158 Ind. App. 467, 303 N.E.2d 64.

When the legislature creates a fact finding body of experts, their decision should not be overridden merely because the reviewing court may have reached a contrary opinion on the same evidence. *Dept. of Financial Institutions v. State Bank of Lizton, supra.*

In the present case, the Department's findings and conclusions in its initial denial of Colonial's application were neither capricious nor arbitrary and were supported by substantial evidence.

Among the factors considered by the Department in its denial were: The new bank offered no significant new services in its proposed service area; the proposed service area is close to Marion County and its residents have close economic ties to Marion County; the proposed service area contains the home office and branch of one bank, branches of two other banks and the approved location of a branch for an additional bank; Boone County's bank office to population ratio is greater than all but one of the surrounding counties; six branches of Indianapolis banks exist or are proposed adjacent to the new bank service area; several branch banks have been approved in the applicant's service area; and two new commercial banks were recently chartered in Hamilton County immediately adjacent to the proposed service area.

These facts clearly constitute a substantial basis upon which the Department could find that no public necessity existed at that time for a new bank in Zionsville. Consequently we find the trial court erred in reversing the Department's determination.

The judgment is reversed and this case is remanded to the trial court for further proceedings not inconsistent herewith.

White, J. & Staton, J. (by designation) concur.

NOTE—Reported at 375 N.E.2d 285.